# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**NATIONAL UNION FIRE INSURANCE**
**COMPANY OF PITTSBURGH PA,**

    **Plaintiff,**

**v.**                                                              **CASE NO. 3:13cv413/MCR/CJK**

**BAPTIST HEALTH CARE CORPORATION,**

    **Defendant/Third Party Plaintiff,**

**v.**

**MIDWEST EMPLOYERS CASUALTY CO.**

    **Third Party Defendant.**

_____/

## ORDER

      This is an action for declaratory relief filed by Plaintiff National Union Fire Insurance Company of Pittsburgh ("National Union") against Defendant Baptist Health Care Corporation ("Baptist"). In its Answer, Baptist identified third-party defendant, Midwest Employers Casualty Company ("Midwest") as an indispensible party to the action and subsequently filed a Third-Party Complaint against Midwest (doc. 7). Before the Court is Midwest's Motion to Dismiss Baptist's Third-Party Complaint (doc. 21). As explained below, the motion will be granted.

## Background

      This suit arises out of two back injuries suffered by Valerie Blankenship while employed with Baptist. Blankenship's first injury occurred on April 30, 2001. On June 6, 2001, Blankenship returned to work with no restrictions and worked throughout the remainder of the year. Blankenship's second injury occurred on February 9, 2002. In November 2012, Blankenship filed a petition with the Judge of Compensation claims in Escambia County, Florida, claiming permanent and total disability due to her work

injuries. In March 2013, Baptist accepted Blankenship's condition as one of permanent and total disability and entered into a settlement agreement with her. As of August 12, 2013, the date of Baptist's Answer, Baptist had paid Blankenship $391,295.95 in workers' compensation benefits. Baptist is obligated by the settlement agreement to pay additional weekly benefits to Blankenship in the future.

Throughout 2001, Baptist maintained excess insurance coverage for workers' compensation claims through a policy with National Union, which obligates National Union to cover claims over and above Baptist's $250,000 self-insured retention ("National Union Policy"). Throughout 2002, Baptist had a similar policy with Midwest with a self-insured retention of $500,000 ("Midwest Policy"). After its settlement with Blankenship, Baptist sought reimbursement from National Union for $141,291.95, the amount Baptist had paid above its $250,000 retention as of August 12, 2013. National Union, which did not agree to Baptist's settlement with Blankenship, has refused to remit the requested reimbursement and instead filed the instant suit requesting a declaration that it is not obligated to reimburse Baptist under the National Union Policy. In response, Baptist filed a third-party complaint against Midwest alleging that if National Union is not obligated to reimburse Baptist, then Midwest must do so.[1] Midwest has moved to dismiss Baptist's third-party complaint.

## Discussion

In ruling on a motion to dismiss, the Court accepts the non-conclusory factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). To prevent dismissal of a complaint under Rule 12(b)(6), "the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level;' if they do not, the

---

[1] According to Baptist, the parties are unclear as to whether Blankenship's benefits are attributable to her 2001 or 2002 injury, or perhaps some combination of both. National Union has taken the position that Blankenship's injuries from her April 2001 accident were "fully resolved" by the time she returned to full duty work in June 2001. In addition, National Union considers Blankenship's February 2002 injury separate and distinct from her first injury such that payments incurred after June 2001 are not related to Blankenship's first injury. As such, National Union argues that all payments fall outside National Union's policy period.

Case No. 3:13cv413/MCR/CJK

plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Joinder of a third party is permissible if the third party is or may be liable to the defendant for all or part of the claim against it. Fed. R. Civ. P. 14(a)(1).

Midwest argues that there is no case or controversy between it and Baptist because Baptist's claim against it is independent of National Union's underlying claim and, therefore, joinder of Midwest is not permitted. In response, Baptist maintains that Midwest is an indispensible party to the action because the issue raised by National Union requires the Court to decide whether Blankenship's benefits are attributable to her 2001 or 2002 injury, such that Midwest's liability is dependent on the outcome of National Union's suit.

The Court finds that Baptist's Third-Party Complaint against Midwest must be dismissed. Federal Rule of Civil Procedure 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*." Fed. R. Civ. P. 14(a)(1) (emphasis added). According to binding Circuit precedent, "for impleader to be available [under Rule 14] the third party defendant must be liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff;" otherwise, the claim is independent. *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967) (internal marks omitted).[2] Here, Midwest may not be joined as a party in this suit because there are no circumstances under which Midwest could be liable "for all or part of [National Union's] claim against [Baptist]." Fed. R. Civ. P. 14(a)(1). National Union seeks a declaration that it has no obligation to indemnify Baptist for any benefits paid to Blankenship under the National Union Policy. If National Union prevails, the result simply will be that National Union is not obligated to cover the benefits paid to Blankenship. If National Union does not prevail, National Union may be required to reimburse Baptist for Blankenship's benefits. Either way, Midwest will not be liable for any judgment entered against Baptist in this suit. In short, this is a dispute solely

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

Case No. 3:13cv413/MCR/CJK

between National Union and Baptist, and impleader under Rule 14 is unavailable. This is true even where, as here, the third-party claim arises out of the same facts as the main claim and despite the potential efficiencies gained by having all three parties in one action. *See Joe Grasso & Son*, 380 F.2d at 751 (recognizing that "when the defendant's right against the third party is merely an outgrowth of the same core of facts which determines the plaintiff's claim, impleader is properly used 'to reduce litigation by having one lawsuit do the work of two,'" but applying "the obverse rule . . . that an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim") (citations omitted). *See also United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987) ("Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim"), *cert. denied*, 484 U.S. 851 (1987).

Finally, Baptist argues that if the Court were to dismiss Midwest from the instant suit and later find that National Union has no obligation to indemnify Baptist, it will then be forced to bring another suit against Midwest, which could lead to Baptist "being whipsawed with inconsistent rulings as to its rights under the two policies." A similar argument was rejected in *Joe Grasso & Son* because, contrary to the third party plaintiff's argument, liability in the case was not an "either/or" proposition.[3]

---

[3] Plaintiff Joe Grasso & Son, Inc. ("Grasso") sued the United States seeking a refund of federal employment taxes Grasso allegedly owed as an "employer" of fishermen who worked on its commercial fishing vessels. The United States brought a third-party complaint against the captains of those vessels, alleging that if Grasso could prove that it was not the fishermen's employer, then the captains necessarily would be liable for the taxes by virtue of an employer-employee relationship between the captains and the crewmen. 380 F.2d at 750. The district court dismissed the government's third-party complaint under Rule 14(a). *See Joe Grasso & Son, Inc. v. United States,* 42 F.R.D. 329, 330 (S.D. Tex. 1966), *aff'd*, 380 F.2d 749 (5th Cir. 1967). On appeal, the government argued that even though this case is not the typical Rule 14(a) case where the third party defendant is secondarily liable for the judgment against the original defendant, either Grasso or the captains will "in all likelihood" be liable for the taxes and not joining the captains may cause the government to "be whipsawed in separate trials in which both Grasso and the captains will escape liability by successfully arguing that the other is the employer." *Joe Grasso & Son*, 380 F.2d at 752. The Fifth Circuit rejected the government's argument because the liability of the two taxpayers was not "an either/or proposition," as it was possible the crewmen were not anyone's employees but rather were independent contractors. *Id.* Thus, because the liability of the captains would not necessarily depend on Grasso's status but would instead depend on whether the captain-crew relationship fell within the applicable tax statutes, a separate claim, the court affirmed the third-party complaint's dismissal. *Id.*

Case No. 3:13cv413/MCR/CJK

The same rationale applies here, and Baptist has not attempted to distinguish *Joe Grasso & Son*. In National Union's suit against Baptist, National Union seeks a declaration that Blankenship's benefits are attributable to her 2002 injury, rather than her 2001 injury. While this appears to create only two possibilities where one of the two insurers would be liable, the facts of this case include a third possibility. For instance, if National Union prevails in the present action it does not necessarily follow that Midwest will be liable. Instead, Midwest's potential liability would depend on the specific terms of the Midwest Policy, and it is possible, depending on the terms of that policy, that only Baptist will be responsible for the damages. Moreover, Baptist admits that Blankenship's benefits have not yet exceeded the $500,000 self-insured retention applicable under the Midwest Policy, and Baptist has not alleged that it has made a claim under that policy. National Union's Policy and its liability are at issue in this suit; Midwest's potential liability is a separate issue. Accordingly, Baptist's Third-Party Complaint against Midwest must be dismissed.

Accordingly:

1. Midwest's Motion to Dismiss Baptist Health's Third-Party Complaint (doc. 21) is **GRANTED**, and Baptist Health's Third-Party Complaint against Midwest (doc. 7) is **DISMISSED WITHOUT PREJUDICE**.[4]
2. Midwest's Motion for Summary Judgment (doc. 58) is **DENIED** as moot.

**DONE and ORDERED** this 29th day of September, 2014.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[4] *See Southeast Mortgage Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir. 1975) (noting, in a similar context, that "to avoid possible confusion concerning the scope of the res judicata effect of the district court's decision, the dismissal should be granted without prejudice").

Case No. 3:13cv413/MCR/CJK